# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 6, 2001 Session

## PAMELA J. WRIGHT (QUILLEN) v. DALE M. QUILLEN

**Direct Appeal from the Circuit Court for Davidson County**
**No. 91D-4249     Robert E. Corlew, III, Designated Judge**

---

**No. M2000-01852-COA-R9-CV - Filed July 11, 2001**

---

This appeal arises from the trial court granting a Rule 60 motion to suspend the judgment in a divorce action and allow a new trial. Husband and Wife were divorced in 1994. At that time, Wife was awarded the entirety of Company upon the condition she pay Husband $500,000 for the portion of Company awarded to him in the property division. Shortly after Wife paid Husband the money, Company sold an asset previously believed to be worthless for $1.7 million. Husband filed a Rule 60 motion in 1998 to set aside the trial court's 1994 property division on the basis that Wife had fraudulently valued the asset at $0 during the divorce hearing. The trial court granted the Rule 60 motion, setting a new trial to redetermine the value of Company at the time of the divorce. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Helen Sfikas Rogers, Nashville, Tennessee, for the appellant, Pamela J. Wright.

John L. Whitfield, Jr. and Irene R. Haude, Nashville, Tennessee, for the appellee, Dale M. Quillen.

**OPINION**

On February 8, 1994, Pamela J. Wright and Dale M. Quillen were divorced through the entry of a final divorce decree.[1] Among the marital property allocated in the decree was Wright Travel, a travel agency operated by Ms. Wright. The decree awarded Mr. Quillen 29.4% of Wright Travel with a stated value of $500,000. It also dissolved a restraining order which had prohibited Ms. Wright from renegotiating a contract for the computer reservation system used by the company. However, the decree required Ms. Wright to treat Mr. Quillen as a minority shareholder until she paid him $500,000 for his awarded portion of the business.[2] On March 24, 1999, the court entered an order recognizing that Ms. Wright had paid Mr. Quillen $500,000 for his portion of Wright Travel. As a result, the court ruled that Ms. Wright would "have no further obligation to provide to [Mr. Quillen] any additional financial information concerning The Wright Travel Agency." Both parties appealed the final judgment of the trial court.[3]

In his appeal, Mr. Quillen argued that Ms. Wright had misrepresented the value of the computer system and her willingness to change suppliers for the system.[4] In addition, Mr. Quillen argued that he had "newly discovered evidence" that the actual value of this system was

---

[1]This decree was entered after the completion of a lengthy and contentious jury trial.

[2]In his status as a minority shareholder, Ms. Wright was required to inform Mr. Quillen of the details of any computer reservation contract negotiations.

[3]Ms. Wright's appeal of the initial divorce decree involved issues having no bearing on the case currently before this court.

[4]Mr. Quillen requested a new trial on the basis of "newly discovered evidence" on the valuation of Wright Travel, as well as requesting relief on several other matters not relevant to the current case.

between 1.5 million and 2 million dollars instead of the much lower figure returned by the jury.[5] On October 4, 1995, this court refused to grant a new trial and found the valuation of Wright Travel to be proper.[6]

As this previous appeal was being considered by this court, Ms. Wright entered into a contract to sell the computer system of Wright Travel for $1.7 million.[7] On December 17, 1998, Mr. Quillen filed a Rule 60 motion for relief from judgment or, in the alternative, for a final order distributing marital property. Mr. Quillen argued that the trial court had never valued the computer reservation system and that he had only become aware of the May, 1994 sale of the computer system in June of 1998. After a hearing on the motion, the trial court granted a new trial on the issue of the value of Wright Travel. Ms. Wright filed an application for an interlocutory appeal which was granted.[8] This appeal followed.

The issue, as we perceive it, is as follows:

Did the trial court abuse its discretion in granting a new trial on the basis of a Rule 60.02 motion filed five years after a final judgment?

---

[5]In an order reltated to this previous appeal, this court found that the "newly discovered evidence" consisted only of "a bare allegation" and that no new evidence was presented by Mr. Quillen. *Wright v. Quillen*, 01-A-01-9406-CV-00284, (Tenn. Ct. App. Sept. 23, 1994).

[6]In our order, this court did find for Mr. Quillen in several of these unrelated matters.

[7]This contract was signed in May, 1994, four months after the parties' final divorce in February, 1994, and three months after Ms. Wright "bought out" Mr. Quillen of his share of Wright Travel in March, 1994.

[8]Ms. Wright had previously appealed the trial court's order under Rule 3 of the Tennessee Rules of Civil Procedure. This initial appeal was dismissed without prejudice because the trial court's decision to grant a new trial was not a final judgment.

This court's review of the trial court's legal conclusions is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

## Rule 60.02 Motion

Rule 60.02 of the Tennessee Rules of Civil Procedure states:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.* A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P 60.02 (emphasis added).

Mr. Quillen, in his December 17, 1998, Rule 60.02 Motion, states that he is seeking his post-judgment relief on the basis of "perjured testimony and a fraud perpetrated on the Court." Under Rule 60.02, a motion seeking relief for "fraud . . . misrepresentation, or other misconduct of an adverse party . . . shall be made . . . not more than one year after the judgment, order or proceeding was entered." *See id.* Mr. Quillen filed his Rule 60.02 motion four years and ten months after the entry of the final decree of divorce. Thus, Mr. Quillen's motion should be invalid on its face because it was filed in an untimely manner. However, Mr. Quillen has presented several arguments to both this court and the trial court as to why the clear language of Rule 60.02 should not apply in this case.

Mr. Quillen first argues that section 36-4-113 of the Tennessee Code allows a trial court to order a new trial even after the one year limitation. Section 36-4-113 provides for the possibility that a trial court could review a jury decision in a divorce case and subsequently order a new trial.[9] The statute specifically states:

> Issues may be made up at the request of either party upon matters of fact charged in the bill or petition and denied in the answer, and be tried by a jury in presence of the court, and a new trial may be granted of the issues, should the court deem it necessary.

Tenn. Code Ann. § 36-4-113 (1996).

---

[9] While we note that Mr. Quillen's motion was brought under Rule 60 and not Rule 59 of the Tennessee Rules of Civil Procedure, we feel it necessary to address this issue.

Mr. Quillen notes that the statute contains no time limits or specific requirements that must be met before a trial court may grant a new trial. While we agree that the statute does not contain such language, we also note that the statute contains no language suggesting that any determination requiring a new trial is exempted from the normal rules contained in the Tennessee Rules of Civil Procedure. This court feels that it was not the intent of the legislature for this statute to usurp these rules. As such, any motion for a new trial under this statute must meet the requirements of Rule 59.02[10] or Rule 59.05[11] of the Tennessee Rules of Civil Procedure, both of which contain 30 day limits. Clearly, Mr. Quillen's motion does not meet this 30 day filing requirement nor is the trial court ordering a new trial within 30 days of the final entry of judgment. As a result, section 36-4-113 of the Tennessee Code has no bearing on the timeliness of Mr. Quillen's Rule 60.02 motion.

Mr. Quillen notes that a trial court has jurisdiction to reconsider alimony awards and child support obligations after the entry of a final decree of divorce.[12] This argument has no bearing on the post-divorce change in value of the computer system of Wright Travel. The division of Wright Travel by the trial court was clearly division of marital property as stated in the trial court's final decree and not related to alimony or child support awards.

---

[10]This rule states that "[a] motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58." Tenn. R. Civ. P. 59.02.

[11]This rule states that "[w]ithin 30 days after entry of judgment the court on its own initiative may alter or amend the judgment, or the court may order a new trial for any reason for which it might have granted a new trial on motion of a party where no such motion has been filed." Tenn. R. Civ. P. 59.05.

[12]Ms. Wright was given primary custody of the couple's minor child, and thus not required to pay any child support. She was, however, ordered to pay $3000 per month alimony *in futuro* to Mr. Quillen.

Mr. Quillen then argues that this court, in *Croley v. Tiede*, No. M1999-00649-COA-R3-CV, 2000 WL 1473854, at *1 (Tenn. Ct. App. Oct 5, 2000) (*no perm. app. filed*), found that, according to Mr. Quillen, "some property division issues remain open long post-divorce; post-appeal; and post finality of decree."[13]  *Croley v. Tiede* was a post-divorce case dealing with the division of Husband's retirement plan.  In *Croley*, the retirement plan existed during the marriage and Wife was awarded a percentage of the plan in the final divorce decree.  However, the retirement plan's method of distribution gave added weight to post-divorce, pre-retirement service.  This court adopted the time rule formula for calculating Wife's amount of retirement award, allowing Wife to benefit from this post-divorce, pre-retirement service.

We note that this court specifically found that it was "simply divid[ing] the marital property which existed at the time of the divorce" using the time rule formula. *Id.* at *7 fn 5. We find nothing in the language of the opinion which suggests that, as a general rule, the division of marital property remains open to re-litigation post divorce, post appeal or post finality of decree.  Mr. Quillen's reliance on this court's ruling in the *Croley* case is in error.

Ms. Wright has argued that the trial court incorrectly granted Mr. Quillen's Rule 60.02 motion for a new trial.  This motion was based upon "a fraud perpetrated on the Court sufficient to grant post-judgment relief."  Ms. Wright has cited the clear language of Rule 60.02 as stating

---

[13]We also note that this case has not been formally released by the court and is thus subject to withdraw or revision.

that such Rule 60.02 motions "shall be made . . . not more than one year after the judgment, order or proceeding was entered."  Tenn. R. Civ. P 60.02.  We agree.

> "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." ***Thompson v. Fireman's Fund Ins. Co.***, 798 S.W.2d 235, 238 (Tenn. 1990).  Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.  ***Toney v. Mueller Co.***, 810 S.W.2d 145, 146 (Tenn. 1991).

***Banks v. Dement Const. Co., Inc.***, 817 S.W.2d 16, 18 (Tenn. 1991).  Mr. Quillen has presented no reason why this "escape valve" should be opened nearly three years and ten months after the limitation on filing a Rule 60 motion has passed.  We find that the trial court was in error when it granted Mr. Quillen's Rule 60.02 motion.  Mr. Quillen's motion was clearly not filed in a timely manner.  Therefore, we reverse the trial court and remand this case for entry of an order denying Mr. Quillen's Rule 60.02 motion.

### Conclusion

Based on the foregoing conclusions, we hereby reverse the trial court's ruling granting a new trial.  Costs on appeal are assessed against the Appellee, Dale M. Quillen, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE